# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

## CIVIL NO. 3:04CV210
## (3:01CR11-5)

| | | |
|---|---|---|
| **TIMOTHY B. BURNHAM,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **Vs.** | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Petitioner's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence and a motion for expedited review.  No response is necessary from the Government.

A prisoner in federal custody may attack his conviction and sentence on the grounds that it is in violation of the Constitution or United States law, was imposed without jurisdiction, exceeds the maximum penalty, or is otherwise subject to collateral attack.  **28 U.S.C. § 2255.**  However,

> [i]f it plainly appears from the face of the motion and any annexed
> exhibits and the prior proceedings in the case that the movant is
> not entitled to relief in the district court, the judge shall make an

order for its summary dismissal and cause the movant to be notified.

**Rule 4, Rules Governing Section 2255 Proceedings for the United States District Courts.**  The Court, having reviewed the record of the criminal proceedings, enters summary dismissal for the reasons stated herein.

## I.  PROCEDURAL HISTORY

On May 10, 2001, Petitioner was charged in a superseding bill of indictment with conspiracy to defraud, in violation of 18 U.S.C. § 371, and conspiracy to money launder, in violation of 18 U.S.C. § 1956(h).[1] **Second Superseding Bill of Indictment, filed May 10, 2001.**  On June 5, 2001, the undersigned denied the Petitioner's motion to continue the trial but allowed his first court appointed counsel to withdraw from the case.  **Order, filed June 5, 2001.**  By virtue of that same Order, Claire Rauscher was appointed to represent the Petitioner.  *Id.*  Six days later, the undersigned *sua sponte* continued the case from the trial calendar.  **Order, filed June 11, 2001.** Petitioner's case was continued from the trial calendar a second time in

---

[1]The original bill of indictment, filed January 11, 2001, did not name the Petitioner as a defendant.  Likewise, the superseding bill of indictment, filed March 15, 2001, did not name him as a defendant.

August 2001. **Order, filed August 20, 2001.** On September 26, 2001, the

Petitioner entered into a plea agreement with the Government pursuant to

which he agreed to plead guilty to Count One of the second superseding bill of

indictment. **Plea Agreement, filed September 26, 2001.** In the plea

agreement, Petitioner was advised that he faced a maximum sentence of five

years imprisonment and waived the right to contest his conviction or sentence

on direct appeal or pursuant to 28 U.S.C. § 2255 on any grounds other than

ineffective assistance of counsel or prosecutorial misconduct. **Id., at 1, 4.**

On that same date, the Petitioner attended a Rule 11 hearing and was

advised, among other things, of the maximum sentences, his waivers and the

essential elements of the offense to which he pled guilty. **Rule 11 Inquiry**

**and Order of Acceptance of Plea, filed September 26, 2001; Transcript of**

**Amended Rule 11 Electronically Recorded Proceeding, filed August 20,**

**2002.** As is the custom in this Court, not only did the Petitioner answer each

question during the hearing, but he and his attorney signed the Rule 11

Inquiry which was then filed of record. **Rule 11 Inquiry, supra, at 8.** In that

Inquiry, Petitioner acknowledged that his written plea agreement, which the

Court reviewed with him, contained a provision waiving his right to appeal his

conviction or sentence or to contest it in any collateral proceeding, including a § 2255 petition, on any grounds other than ineffective assistance of counsel or prosecutorial misconduct. *Id*. After being advised of the elements of the offense, the Petitioner also acknowledged that his guilty plea was knowing and voluntary, he was satisfied with the services of his attorney, he had discussed with his attorney how the Guidelines applied to his case, no one had coerced or threatened him, and he understood and agreed with the terms of his plea agreement. *Id*., 1-8.

On April 29, 2003, the undersigned sentenced the Petitioner to serve 37 months of imprisonment. **Judgment in a Criminal Case, filed May 8, 2003.** The Petitioner did not appeal either his conviction or sentence. On April 28, 2004, the Petitioner timely filed this motion pursuant to 28 U.S.C. § 2255 raising as grounds for relief ineffective assistance of counsel.

## II. STANDARD OF REVIEW

In considering Petitioner's claims that he has not received adequate assistance of counsel,

> [f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so

> serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, **466 U.S. 668, 686 (1984).** Unless a defendant makes both showings, his claim of ineffective assistance of counsel must fail. *Id*. Thus, a defendant must show that counsel's performance fell below objective standards of reasonableness and, that but for her conduct, there was a reasonable probability the result would have been different. *Id*., **at 688;** *Hill v. Lockhart*, **474 U.S. 52 (1985);** *Fields v. Attorney Gen.*, **956 F.2d 1290 (4th Cir. 1992) (In order to obtain relief from a guilty plea on the basis of ineffective assistance of counsel, a defendant must show both that counsel was incompetent and, but for that incompetence, he would not have pled guilty).** If the defendant fails to make the first showing, there is no need to consider the second. *Strickland, supra*.

### III. DISCUSSION

Before addressing the Petitioner's claims, it is necessary to describe the

complex conspiracy of which he was convicted.  The Petitioner and his co-

defendants

> "devised and executed an elaborate *Ponzi*[2] scheme to obtain
> funds from investors by falsely representing, among other things,
> that they were able to pay investors fixed annual rates of return of
> between 8 and 84 percent because Banyan (International, Ltd.)
> earned profits from an investment strategy that was virtually risk-
> free."  Second Superseding Bill of Indictment, filed May 10,
> 2001, at 1.  Investors were told, among other things, that by
> placing money into "pure trust organizations" [PTO's] devised by
> the Defendants, the money would be beyond government control
> and, therefore, tax free.  Investors were encouraged to mortgage
> their homes so that the equity received could be invested in
> Banyan.  The Defendants also told investors to withdraw money
> from their IRA accounts for investment in sham IRA custodian
> accounts which would purportedly provide tax free interest
> income.  Over 500 individuals who invested $56 million with
> Banyan were defrauded of approximately $33 million.

**Order, filed January 14, 2003, at 3.**

---

[2]A *Ponzi* scheme is a "fraudulent investment scheme in which money
contributed by later investors generates artificially high dividends for the
original investors, whose example attracts even larger investments.  Money
from the new investors is used directly to repay or pay interest to old
investors, usually without any operation or revenue-producing activity other
than the continual raising of new funds.  This scheme takes its name from
Charles Ponzi, who in the late 1920s was convicted for fraudulent schemes
he conducted in Boston."  ***Black's Law Dictionary* (7th ed. 1999).**

The Petitioner's first claim is that his attorney should not have allowed him to enter into the plea agreement with the Government because the indictment did not allege that the object of the conspiracy charged in Count One was the sale of unregistered securities or that the Petitioner was personally involved with unregistered securities. He also claims that the indictment failed to allege that unregistered securities were sold in furtherance of the conspiracy. However, the indictment alleged, and the Petitioner did not dispute, that he became a paid solicitor for Banyan in 1998. The indictment further alleged that

> [a]s a part of their scheme and artifice to defraud, the defendants concealed their activities and the true nature of those activities from investor protection agencies, such as the United States Securities and Exchange Commission ("SEC"), the United States Commodities Future Trading Commission ("CFTC"), and state securities agencies. Those agencies enforce laws designed to provide disclosure to investors and prevent frauds by requiring persons engaged in the sale of a security, such as the so-called notes receivables sold by Banyan, to register the offering, sell only through registered or licensed individuals and entities, and provide potential investors with materials including audited financial statements and detailed disclosures of risks. The defendants sought to evade these laws and avoid scrutiny by the investor protection agencies by . . . [f]alsely representing that they were not subject to the investor protection laws, selling securities through sales persons and firms who were not licensed or registered to sell securities, operating unregistered investment companies and commodity trading pools [and] [f]alsely

representing that they were not selling securities to individuals because they were selling to PTO's through negotiated contracts. . . . [The defendants] knew that neither Banyan nor its note receivables was registered with the SEC and that they personally were not licensed to sell securities.

. . .

In furtherance of this conspiracy and to accomplish its objectives, defendants and their co-conspirators committed and cause to be committed at least one overt act in the Western District of North Carolina, as set forth in paragraphs 1 through 21 above[.]

**Second Superseding Bill of Indictment, supra., at 3, 8.**

Thus, Count One specifically incorporates the prior paragraphs, including the paragraph describing the defendants' illegal selling of unregistered securities. The indictment clearly states that one object of the conspiracy was to sell unregistered securities, *i.e.*, PTO's, thereby defrauding, and that the selling of those PTO's were overt acts in furtherance of the conspiracy. The Petitioner's claim that his attorney should have noted "defects" in the indictment is rejected.

Moreover, contrary to his position now, the Petitioner was advised during the Rule11 hearing that the conspiracy to which he was pleading guilty involved fraud in the sale of securities. **Rule 11 Transcript, *supra*, at 8.** He unequivocally stated in open court that he was guilty of the sale of unregistered securities which was, as the Magistrate Judge advised him, one

aspect of the conspiracy.  *Id.*, at 11-13.  His attorney also explained that,

although the conspiracy involved many illegal acts, the Petitioner's

involvement in the conspiracy was limited to the sale of unregistered

securities.

> Even though Mr. Burnham did say he was pleading guilty to
> Count One as refers to sale of unregistered securities, Count One
> does charge numerous, different subsequent offenses under that
> conspiracy.  I want to make it clear that that – that substantive
> offense, the sale of unregistered securities, in violation of Title 15,
> United States Code, Section 77e, which is a non-scienter, strict
> liability offense.  And that's the offense to which Mr. Burnham is
> pleading guilty to today.

*Id.*, at 24.  At that point the Magistrate Judge again asked the Petitioner if he

understood "all of the elements" of the offense of conspiracy to defraud by the

selling of unregistered securities and again asked if he was admitting his guilt.

*Id.*, at 24-25.  The Petitioner again acknowledged his guilt.  *Id.*, at 25.  The

Petitioner's attempt now to claim that his attorney failed to inform him that he

was pleading guilty to conspiracy, not to the substantive charge of selling

unregistered securities, is disingenuous.  ***United States v. DeFusco*, 949 F.2d

114, 119 (4th Cir. 1991) (A petitioner's statements during the Rule 11

colloquy "constitute a 'formidable barrier' to collateral proceedings to vacate

the plea." (quotations omitted)); *accord, United States v. Lambey*, 974 F.2d**

**1389, 1394-95 (4ᵗʰ Cir. 1992);** *United States v. Land*, **60 Fed. Appx. 963 (4ᵗʰ Cir.),** *cert. denied*, **540 U.S. 1068 (2003).** Moreover, although "the conspiracy had multiple objects – wire fraud [and] securities fraud[] – the objects clearly were related to the overall goal of defrauding investors through fraudulent [investments]." *United States v. Bollin*, **264 F.3d 391, 405 (4ᵗʰ Cir. 2001).** "The very structure of the scheme in this case required the conspirators to play different roles – brokers, project managers and traders – to carry out the fraud and obscure the disposition of funds placed in the [PTO's]." *Id.*, **at 406.** Petitioner's claim that he is not guilty of conspiracy because all he did was sell unregistered securities is frivolous. Thus, his attorney cannot have been ineffective.

Next, the Petitioner claims that at his sentencing hearing, he once again denied involvement in the conspiracy, admitting only to the substantive crime of selling unregistered securities. "Mr. Burnham specifically denied entering into any agreement either by direct agreement, or tacitly by behavior." **Petitioner's Brief in Support of § 2255 Motion, at 7.** This statement is in direct conflict with his admission at the Rule 11 hearing that he was guilty of

conspiracy, *albeit* that his role may have been limited to the sale of unregistered securities.

Moreover, he acknowledged his role during the sentencing hearing. The Petitioner's Probation Officer recommended that he not be given a three-level adjustment for acceptance of responsibility. This was based on the fact that the Petitioner had failed to inform the Internal Revenue Service (IRS) that he had, in fact, entered into a plea agreement with the Government pursuant to which he pled guilty to the conspiracy count. **Presentence Report, revised April 14, 2003, at 13.** As part of the plea agreement, the Petitioner was required to file tax returns; however, when he prepared the same, he represented that he was due a deduction as a victim of the Banyan scheme. *Id.* At sentencing, the Petitioner's attorney explained his somewhat strident position and was able to recoup the three-level acceptance of responsibility.

> Mr. Burnham has accepted responsibility in this case. He entered a plea. . . . The beef continues to be as to whether he in fact accepted responsibility for all of these allegations in Count One. Well, Your Honor, Mr. Burnham pled specifically to one of – You know, Your Honor, in conspiracy courts, there's – especially in the one that was in this indictment, there was (sic) numerous parts to that. There was wire fraud, bank fraud, mail fraud, tax fraud, and there was also the sale and delivery of unregistered securities. And in negotiations with the government, Mr. Burnham admitted that, yes, in fact, he was involved in that and he didn't know at

the time that they were securities, but he admitted that, in fact, that is what he did, and that's what he pled to, and we made it clear at the time of the plea that that's what he was pleading to. He has never and will never say that he intended to defraud anyone or that he knew about the fraud, and I'd submit to the Court that, based on the evidence that I reviewed, that at no time is there any statement that, in fact, Mr. Burnham knew about the losses sustained by Mark Vaughan and Hal Greer.

**Transcript of Sentencing Hearing, filed May 23, 2003, at 6-7.** The fact that the Petitioner thought he and his co-conspirators had devised a scheme which could avoid governmental regulation is of no moment. ***United States v. Tucker*, 345 F.3d 320, 330 (5th Cir. 2003) ("The government need only prove that the object sold or offered is, in fact, a security; it need not be proved that the defendant had specific knowledge that the object sold or offered was a security.").** He pled guilty to conspiring to sell unregistered securities; admitted that he entered into that conspiracy; and admitted that he himself sold those securities. **Sentencing Transcript, at 22 ("I am so sorry and accept full responsibility for how my involvement with Banyan led so many individuals . . . to lose their investments and suffer financial harm.").** Thus, every element of the crime was not only alleged in the indictment but admitted to by the Petitioner. ***Bollin, supra* (The elements of conspiracy are the existence of a conspiracy; defendant's knowledge thereof; and**

**defendant's voluntary entry into the conspiracy.);** *United States v. United*

*Med. & Surgical Supply Corp.***, 989 F.2d 1390, 1404 (4th Cir. 1993)**

**(Conspiracy to commit securities fraud shown by the following elements: (1)**

**two or more persons came to a mutual understanding to commit a crime; (2)**

**defendant willfully became a member of the conspiracy; and (3) one**

**member of the conspiracy performed an overt act in furtherance of the**

**conspiracy.).**

Petitioner also argues that his attorney should not have allowed him to

enter a guilty plea to conspiracy, a specific intent crime, when he was only

guilty of securities fraud, which he characterizes as a strict liability crime

which has no intent requirement.  As noted above, each element of the

conspiracy charge was alleged in the indictment and admitted by the

Petitioner.  Moreover, the offense of securities fraud requires the Government

to prove that the defendant had the intent to defraud, mislead or deceive,

regardless of his belief as to whether the securities were required to be

registered.  ***Tucker, supra*** **("The focus is then necessarily on whether a**

**defendant possessed the intent to** *defraud* **investors, his belief as to the**

**nature of the certificates notwithstanding.");** *United States v. Tarallo***, 380**

**F.3d 1174, 1181, 1187 (9th Cir. 2004) (A defendant may be convicted of securities fraud if the government proves intent to defraud, mislead, or deceive even if the defendant did not know his specific conduct was illegal.).** The Petitioner's colloquy at his Rule 11 hearing and his allocution during the sentencing hearing establish that he had the requisite intent for conspiracy.

The Petitioner also claims his attorney was ineffective for allowing him to enter into a plea agreement which contains a forfeiture provision because 18 U.S.C. § 982 does not provide for forfeiture in connection with the offense of securities fraud. Title 18 U.S.C. § 2461 authorizes criminal forfeiture for any act for which civil forfeiture is provided. Title 18 U.S.C. § 981(a)(1)(C) authorizes forfeiture of any property which is derived from or traceable to any offense defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit any such offense. Title 18 U.S.C. § 1956(c)(7) defines such conduct as any offense listed in 18 U.S.C. § 1961(1). That section includes fraud in the sale of securities. Thus, the Petitioner was properly subjected to forfeiture in his plea agreement.[3] **_See, e.g., United States v. Razmilovic_, 419 F.3d 134, 135-36 (2d Cir. 2005).**

---

[3]The fact is, however, that none of the Petitioner's property was forfeited. **Sentencing Transcript, at 27.**

Petitioner's next argument is that defense counsel should have filed a direct appeal from his conviction and sentence based on ineffective assistance.[4]   However, he does not allege that he directed counsel to file an appeal.  Nor does he claim that counsel failed to consult with him about the advisability of filing such an appeal.[5]   Again, Petitioner argues only that because his attorney allowed him to plead guilty to conspiracy when all he was guilty of was securities fraud establishes ineffective assistance.[6]

---

[4]The terms of the plea agreement prohibited a direct appeal on any ground other than ineffective assistance of counsel or prosecutorial misconduct.  The Petitioner does not claim that an appeal on any ground other than ineffective assistance should have been filed.

[5]It is, however, telling that the Petitioner, who was a licensed attorney at one time, did not make specific claims under oath that he directed counsel to file an appeal based on ineffective assistance of counsel or that she failed to consult with him about the same.

[6]The Court is compelled to note that in the absence of the outstanding representation provided by Ms. Rauscher, the Petitioner faced a sentence of 20 years imprisonment.  Indeed, in the event that the undersigned determined to set aside the Petitioner's plea agreement and allow him to go forward to trial, he quite possibly would face sentences similar to those of his co-defendants.  For example, Stewart, who was convicted by jury verdict, was sentenced to 60 months imprisonment on Count One to run consecutive to his conviction on Count 14 for which he received a sentence of 240 months.  In all, Stewart received a sentence of 2,100 months imprisonment, effectively a life sentence.  Co-defendant Vaughan received a sentence of 220 months and Greer received a 120-month sentence.

In considering this claim that counsel should have filed a direct appeal implicating herself as ineffective, it is advisable to note the outcome of the Petitioner's case. The only objection to the presentence report which affected the Petitioner's Guideline range was the objection lodged by Ms. Rauscher to the failure of the Probation Officer to award a three-level adjustment for acceptance of responsibility. The undersigned granted that objection and gave the Petitioner the three-level adjustment. This victory by defense counsel modified the Petitioner's Guideline range of imprisonment from 41 to 51 months to 30 to 37 months. Moreover, had the Petitioner pled guilty to Count Fourteen, conspiracy to money launder, he would have faced a possible 20-year sentence.

> In order to establish a Sixth Amendment violation based on counsel's failure to appeal, [the Petitioner] must prove that (1) counsel was ineffective and (2) but for counsel's ineffectiveness, an appeal would have been filed. An attorney who fails to file an appeal after being instructed by his client to do so is *per se* ineffective. When a client does not specifically instruct counsel to appeal, however, whether counsel has been ineffective by failing to appeal depends upon "whether counsel in fact consulted with the defendant about an appeal." In this context, "consult" "convey[s] a specific meaning – advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." If counsel has not consulted with [her] client, the court must then ask whether the failure to consult itself constitutes deficient

performance.  The Sixth Amendment requires counsel to consult with the defendant concerning whether to appeal when counsel has reason to believe "either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."

*United States v. Witherspoon*, 231 F.3d 923, 926 (4th Cir. 2000) (quoting

*Roe v. Flores-Ortega*, 528 U.S. 470, 478, 480 (2000)) (other internal

**citations omitted).**  The Petitioner does not allege that he instructed counsel

to appeal.  Nor does he allege that counsel failed to advise him concerning his

right to appeal.  In fact, after sentence was pronounced, the Petitioner

specifically acknowledged on the record that he understood his right to appeal

on the grounds of ineffective assistance of counsel or prosecutorial

misconduct.  **Sentencing Transcript, at 30.**  He made no mention of a desire

to appeal; thus, he did not make a demonstration that he was interested in

appealing.  Assuming *arguendo* that counsel failed to consult him, there was

no reason for counsel to have believed that a rational defendant would want to

appeal.  **Witherspoon, supra.**  The Petitioner's objection to the presentence

report had been granted and he still hoped to provide assistance to the

Government prior to reporting to prison.  **Flores-Ortega, supra.**  He had

entered into a plea agreement with the Government and at sentencing, received the same offense level which had been negotiated in that agreement. ***Witherspoon*, 231 F.3d at 926 n.3.** The Petitioner has not made a definitive statement on this issue, has not provided an affidavit (although he was a practicing attorney at one time), and has not made a credible showing the he instructed his attorney to appeal or made a demonstration that he was interested in appealing. The Court, therefore, finds that this ground is frivolous as well.

The only remaining ground which merits consideration is that Ms. Rauscher was ineffective by entering into an agreement with the Government to allow the Petitioner to be de-briefed. However, the time period about which the Petitioner complains was prior to Ms. Rauscher's appointment as his attorney.[7] In fact, the Petitioner had not been indicted at that point in time. To successfully assert a claim of ineffective assistance of counsel, the Petitioner must establish that he had a constitutional right to counsel during the time at issue. ***Wainwright v. Torna*, 455 U.S. 586 (1982).** For purposes of a motion based on § 2255, the Petitioner did not have a Sixth Amendment

---

[7]The Petitioner was, actually, represented at that time by retained counsel, A.M. Stroud, from Louisiana.

right to counsel prior to his indictment. ***United States v. Payne***, **954 F.2d 199, 203 (4th Cir. 1992) (The Sixth Amendment right to counsel attaches at or after the initiation of adversarial judicial criminal proceedings.);** ***accord, Perry v. Kemna***, **356 F.3d 880, 895-96 (8th Cir.),** ***cert. denied***, **125 S. Ct. 657 (2004) (no Sixth Amendment right during the investigatory phase, therefore, no claim for ineffective assistance);** ***United States v. Hayes***, **231 F.3d 663, 672-73 (9th Cir. 2000) ("Where a case is still in the investigative stage, or in the absence of a person's being charged, arrested, or indicted, such adversary proceedings have not yet commenced, and thus no right to counsel has attached.");** ***United States v. Moody***, **206 F.3d 609 (6th Cir. 2000);** ***United States v. Mapp***, **170 F.3d 328, 334 (2d Cir. 1999);** ***United States v. Lin Lyn Trading, Ltd.***, **149 F.3d 1112, 1117 (10th Cir. 1998);** ***Kight v. Singletary***, **50 F.3d 1539, 1548 (11th Cir. 1995).** Thus, he may not state a claim for ineffective assistance on this ground.

Because the Court finds that the Petitioner has failed to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," the second prong of *Strickland* need not be reached.

## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that the Petitioner's motion pursuant to 28 U.S.C. § 2255 is hereby **DENIED.**  A Judgment is filed herewith.

**IT IS FURTHER ORDERED** that the Petitioner's motion for expedited review is **DENIED**.

The Clerk is directed to send a copy of this Memorandum and Order and accompanying Judgment to Claire Rauscher as well as to the Petitioner and the United States Attorney.

**Signed: December 2, 2005**

Lacy H. Thornburg
United States District Judge